**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| **BAE SYSTEMS TECHNOLOGY** | | |
| **SOLUTION & SERVICES, INC.,** | * | |
| | | |
| **Plaintiff,** | * | |
| | | |
| **v.** | * | **Case No.: PWG-14-3551** |
| | | |
| **REPUBLIC OF KOREA'S DEFENSE** | * | |
| **ACQUISITION PROGRAM** | | |
| **ADMINISTRATION,** *et al.,* | * | |
| | | |
| **Defendants.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

This case involves a contract dispute between BAE Systems Technology Solutions & Services, Inc. ("BAE") and the Republic of Korea and its Defense Acquisition Program Administration (collectively, "South Korea") arising out of South Korea's efforts to upgrade its F-16 fighter fleet.  Each side has raised claims against one another in this Court.  Second Am. Compl. ¶¶ 68–96, ECF No. 22; Am. Answer 12–19, ECF No. 53.  In addition, South Korea filed an analogous claim against BAE in South Korea, but only after this litigation commenced.  Feb. 4, 2016 Mem. Op. & Order 2, ECF No. 43.  BAE moved preliminarily to enjoin the South Korea litigation.  Pl.'s Mot. Prelim. Inj., ECF No. 73.  In its Opposition to BAE's Motion, South Korea argued that the Court could not issue a preliminary injunction because it lacks subject-matter jurisdiction and because the act-of-state doctrine bars it from exercising any jurisdiction it does possess.  Defs.' Opp'n Prelim. Inj. 24–27, ECF No. 80.  Following a hearing held on July 18, 2016, I preliminarily enjoined South Korea "from taking any further action to prosecute the

Korean suit[] until I resolve the threshold issues of subject matter and personal jurisdiction and the pending motion for summary judgment, or until the parties agree to stay the Korean lawsuit during the time that I take to resolve the jurisdictional issues and summary judgment motion, whichever occurs first." July 19, 2016 Mem. Op. & Order 1–2, ECF No. 84. South Korea has appealed this preliminary injunction. Notice of Appeal, ECF No. 91.

I construe the jurisdictional arguments raised in South Korea's Opposition to Plaintiff's Motion for a Preliminary Injunction as a Motion for Summary Judgment, and I have permitted supplemental briefing on the issue. *See* Defs.' Supp. Br., ECF No. 101; Pl.'s Supp. Br., ECF No. 102. This Memorandum Opinion and Order denies South Korea's Motion because the core of the dispute involves South Korea's commercial activity, not a foreign sovereign's official acts.

## Background

The United States Government hired BAE Systems Technology Solution & Services, Inc. ("BAE") as the lead contractor for an agreement between the U.S. Government and the Republic of Korea's Defense Acquisition Program Administration ("DAPA") "under the U.S. Foreign Military Sales ('FMS') Program to upgrade South Korea's existing fleet of F-16 fighter aircraft for approximately $1.7 billion." Second Am. Compl. ¶ 1, ECF No. 22. Before the governments finalized their agreement, BAE entered into a Memorandum of Agreement ("MOA") with DAPA and "provided DAPA with a Letter of Guarantee for Payment of Bid Bond in the amount of $43,250,000" ("Guarantee"), under which BAE agreed "to pay the bond if it failed to take certain actions during the bid phase of the Upgrade Program." *Id.* ¶ 3. According to BAE, "DAPA continued to insist that BAE [] renew its Letter of Guarantee," even after the FMS contract was in effect, and BAE complied. *Id.* ¶ 23.

BAE "performed successfully the initial phases of work under the KF-16 Upgrade Program." *Id.* ¶ 1. But then, "the U.S. Government informed South Korea that the overall price of the Upgrade Program could increase by as much as $800 million," *id.* ¶ 2, and the U.S. Air Force "terminated for convenience" BAE's contract, at South Korea's direction to cancel BAE's "selection . . . as the KF-16 system integrator for the KF-16 Upgrade Program," *id.* ¶ 4. DAPA now demands payment under the renewed Guarantee, and in BAE's view, "bases its claim for payment not on an alleged violation of the terms of the Guarantee, but on BAE[]'s inability to force the U.S. Government to withdraw its proposed price increases." *Id.* ¶ 5.

Feb. 4, 2016 Mem. Op. & Order 1–2.

BAE filed this declaratory judgment action against DAPA on November 12, 2014, seeking a declaration of rights under the MOA and Guarantees between it and DAPA. ECF No. 1; *see* [Feb. 4, 2016] Mem. Op. 2. "Primarily, BAE seeks a declaration that the Guarantee and its renewals are 'incompatible with, and invalid under, the Foreign Military Sales Program . . . and federal common law of the United States, and . . . therefore unenforceable'; alternatively, it seeks a declaration that it 'did not fail to perform any obligations required of it under such Letter(s) of Guarantee.'" [Feb. 4, 2016] Mem. Op. 2. Plaintiff then amended to name the Republic of Korea as a second defendant. Am. Compl., ECF No. 12. . . .

In July 2015, the Republic of Korea filed suit in Seoul Central District Court in South Korea, alleging breach of contract. [Feb. 4, 2016] Mem. Op. 2. South Korea then filed a motion to dismiss or, alternatively, to stay this case during the pendency of the Republic of Korea's suit against BAE in South Korea. ECF No. 26. I concluded that venue is proper in this Court, and I declined to exercise my discretion to dismiss this case under *forum non conveniens*, or to stay it. I reasoned, based on the evidence before me at that preliminary stage, that "the MOA's validity is entwined with the FMS Program, which is a matter of national security, such that venue certainly should be in this Court." [Feb. 4, 2016] Mem. Op. 3.

July 19, 2016 Mem. Op. & Order 2–3.

BAE then moved for a preliminary anti-suit injunction against the suit in Korea. Pl.'s Mot. Prelim. Inj. I granted the injunction, noting that "it is not clear whether [this] Court has jurisdiction or whether that jurisdiction is threatened" but concluding that "BAE has shown sufficiently that it is likely that the Court has jurisdiction, that its jurisdiction is threatened, and that national security interests are implicated, outweighing considerations of comity to justify an injunction of brief duration to enable me to resolve the preliminary matters of jurisdiction and whether the contracts are divisible." July 19, 2016 Mem. Op. & Order 36.

Because this suit involves claims against a foreign government and one of its agencies, it raises complex jurisdictional issues. The Foreign Sovereign Immunities Act (FSIA) codified the longstanding practice by U.S. courts to grant limited immunity to foreign governments and their political subdivisions as a matter of comity. *See* Curtis A. Bradley, *International Law in the U.S.*

*Legal System* 234–40 (2d ed. 2015).   But the FSIA also recognizes several exceptions to the general grant of immunity.   28 U.S.C. § 1605.   The FSIA constitutes "[t]he only source of subject matter jurisdiction over a foreign sovereign or its instrumentalities in the courts of the United States."   *Blue Ridge Investments, L.L.C. v. Republic of Argentina*, 375 F.3d 72, 83 (2d Cir. 2013).   In suits against foreign states, the FSIA "intertwine[s]" the "issues of personal jurisdiction, subject matter jurisdiction, and immunity."   Bradley, *supra*, at 240.   The FSIA confers subject-matter jurisdiction to federal courts "as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity."   28 U.S.C. § 1330(a).   And "personal jurisdiction [over a foreign state] exists with respect to any claim for which there is federal subject matter jurisdiction."   Bradley, *supra*, at 240.   Thus, "if the court finds that there is an exception to immunity, and that proper service has been made, the court automatically has personal and subject matter jurisdiction" over the claim.   *Id.* at 241.   This Court cannot, therefore, exercise jurisdiction over BAE's claim unless a FSIA exception applies.

Additionally, the act-of-state doctrine "precludes any review whatever of the acts of the government of one sovereign State done within its own territory by the courts of another sovereign State."   *First Nat'l Bank v. Banco Nacional de* Cuba, 406 U.S. 759, 763 (1972).   Thus, even if this Court has personal and subject-matter jurisdiction over the matter, it must decline to exercise jurisdiction if the acts that form the basis of the claim fall within the doctrine.   *See id.*

### Preliminary Injunction Appeal

Before addressing the FSIA and act-of-state doctrine issues, I first must determine whether South Korea's appeal of my preliminary injunction order divests the court of jurisdiction over these matters.   I requested that the parties brief this issue, ECF No. 93, which they did, Pl.'s Ltr. Br., ECF No. 96; Defs.' Ltr. Resp., ECF No. 98; Pl.'s Ltr. Reply, ECF No. 100.

Interlocutory appeals do not divest district courts of jurisdiction. *See Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 203 F.3d 291, 302 (4th Cir. 2000) ("[T]he trial court has authority to pursue its own proceedings filed when a[n] [interlocutory] appeal is pending."). With specific regard to preliminary injunction appeals, "an appeal from an interlocutory order respecting a request for injunctive relief does not defeat the district court's power to proceed further with the case." *Hunter v. Redmer*, No. 15-2047, 2015 WL 8479211, at *2 (D. Md. Dec. 10, 2015); *see also* 16 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3921.2 (3d ed. 2012) ("Ordinarily an interlocutory injunction appeal under [28 U.S.C.] § 1292(a)(1) does not defeat the power of the trial court to proceed further with the case."); William Moore et al., Moore's Federal Practice § 303.32(2)(b)(v) (3d ed. 2016) ("[A]n appeal from an order granting or denying a preliminary injunction does not divest the district court of jurisdiction to proceed with the action on the merits.").

South Korea argues, however, that because the Fourth Circuit will necessarily address the applicability of the FSIA and act-of-state doctrine on appeal, this Court cannot rule on those issues in the interim. Defs.' Ltr. Opp'n 2–3. For this proposition, South Korea relies upon Fourth Circuit case law interpreting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982) (per curiam). *See* Defs.' Opp'n 1–2. That case, however, dealt with an appeal of a final, not interlocutory, order, *Griggs*, 459 U.S. at 57, and the Fourth Circuit cases cited by South Korea did not address whether preliminary injunction appeals divest district courts of jurisdiction to proceed on the merits. In *United States v. Gedeon*, 514 F. App'x 341 (4th Cir. 2013), as in *Griggs*, an appeal of a final order divested the district court of jurisdiction in the matter. *See id.* at 342. And *Doe v. Public Citizen*, 749 F.3d 246 (4th Cir. 2014), held that the district court lacked jurisdiction to deny a motion to intervene after the would-be intervenors appealed the

Court's prior constructive denial of the motion.  *Id.* at 253.  Neither of these cases stands for the proposition that the appeal of an interlocutory injunction divests the district court of jurisdiction. Moreover, Wright and Miller explicitly reject this argument.  *See* Wright, Miller & Cooper, *supra*, § 3921.2 ("The desirability of prompt trial-court action in injunction cases justifies trial-court consideration even of issues that may be open in the court of appeals.").

South Korea's appeal of my preliminary injunction order does not divest this Court of jurisdiction to address the unresolved FSIA and act-of-state doctrine issues or, for that matter, BAE's pending Motion for Summary Judgment. *See id.* ("The power to act pending appeal from preliminary injunction rulings is illustrated by district court rulings . . . on . . . summary judgment . . . ." (footnotes omitted)).

## Discussion

### Foreign Sovereign Immunities Act

Under the FSIA, foreign sovereigns are presumed to be immune from suit in the United States unless one of the Act's exceptions applies. *In re Tamimi*, 176 F.3d 274, 278 (4th Cir. 1999); *see also* 28 U.S.C. § 1604.  Among other exceptions, the FSIA does not grant immunity when the foreign sovereign waives it, 28 U.S.C. § 1605(a)(1), or when the subject of the suit is the foreign state's "commercial activity," *id.* § 1605(a)(2).  Once the plaintiff "produce[s] evidence establishing that the foreign state is not entitled to immunity[,] [t]he ultimate burden of proving immunity . . . rest[s] with the foreign state."  *Gerding v. Republic of France*, 943 F.3d 521, 525 (4th Cir. 1991) (quoting *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 4456, 451 n.5 (6th Cir. 1988)).

As discussed in my July 19, 2016 Memorandum Opinion and Order, a foreign state may waive immunity either explicitly or implicitly.  July 19, 2016 Mem. Op. & Order 22–23.

Implicit waiver occurs when a foreign nation "agree[s] to arbitration in another country" or "agree[s] that the law of particular country should govern a contract" or "file[s] a responsive pleading in an action without raising the defense of foreign sovereign immunity." [H.R. Rep. No. 94-1487, at 18] (emphasis added). "Courts have found waivers of implied sovereign immunity in [these] three circumstances . . . ." *Human v. Czech Republic–Ministry of Health*, No. 14–7142, 2016 WL 3064507, at *8 (D.C. Cir. May 31, 2016) (citing *Foremost–McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 444 (D.C. Cir. 1990)); *see Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic*, 788 F.3d 1329, 1338 (11th Cir. 2015) (recognizing that implied waiver applies under these circumstances); *Af-Cap, Inc. v. Republic of Congo*, 462 F.3d 417, 426 (5th Cir. 2006) (same); *World Wide Demil, L.L.C. v. Nammo, A.S.*, 51 F. App'x. 403, 405 (4th Cir. 2002) (same); *In re Republic of Philippines*, 309 F.3d 1143, 1151 (9th Cir. 2002) (same).

*Id.* at 23. But courts narrowly construe the implicit-waiver exception "in light of the requirement that the foreign state must intend to waive its sovereign immunity." *Heroth v. Kingdom of Saudi Arabia*, 565 F. Supp. 2d 59, 64 (D.D.C. 2008), *aff'd*, 331 F. App'x 1 (D.C. Cir. 2009).

There is strong reason to conclude that South Korea waived any sovereign immunity it once possessed by failing to raise the issue in its first Answer and Counterclaims, *see* Answer, ECF No. 47, an action considered a "point of no return" for the assertion of foreign sovereign immunity, *Canadian Overseas Ores Ltd. v. Compania de Acero del Pacifico S.A.*, 727 F.2d 274, 277 (2d Cir. 1984). South Korea implies that its Amended Answer and Counterclaims, which denied the applicability of FSIA's commercial-activity exception but failed to specifically raise the Act as an affirmative defense, revived its sovereign-immunity defense. *See* Defs.' Supp. Br. 15–17. But "once the immunity is waived in a proceeding, it cannot be revived." *Flota Maritima Browning de Cuba, Sociadad Anonima v. Motor Vessel Ciudad de la Habana*, 355 F.2d 619, 625 (4th Cir. 1964). Nevertheless, because implied waivers are to be narrowly construed, *Heroth*, 565 F. Supp. 2d at 64, I will analyze the commercial-activity exception's applicability.

The commercial-activity exception applies where:

the action is based upon [1] a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).  The most relevant of the enumerated exceptions is the first.  A claim is "based upon" commercial activity if the " 'particular conduct' that constitutes the 'gravamen' of the suit" is commercial in nature.  *OBB Personenverkehr AG v. Sachs*, 136 S. Ct. 390, 396 (2015) (quoting *Saudi Arabia v. Nelson*, 507 U.S. 349, 357 (1993)).  In other words, the commercial-activity exception is potentially applicable where the "core" of the suit concerns actions by a sovereign that are commercial in nature.  *Id.*  Courts must determine "[t]he commercial character of an act . . . by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose."  *Id.* § 1603(d).  For example, a "contract to buy army boots or even bullets is a 'commercial' activity, because private companies can similarly use sales contracts to acquire goods." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614–15 (1992) (citations omitted).  In general, "when a foreign government acts, not as a regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are 'commercial' within the meaning of the FSIA."  *Id.* at 614.  Commercial activity occurs "in the United States" if there is "substantial contact" between the commercial activity and the United States. 28 U.S.C. § 1603(e) (quoting *id.* § 1605(a)(2)).

The "gravamen" of this suit could not be more commercial in nature.  At its "core," this case is about whether or not South Korea has a viable breach of contract claim against BAE for its failure pay DAPA $43,250,000 due to the contractor's asserted failure to prevent the U.S. Government from increasing the price of the F-16 fleet upgrades that were the subject of an underlying FMS contract.  *See* Defs.' Supp. Br. 3 ("[T]he gravamen of BAE's claims in this case

8

is [South Korea's] confiscation of, and attempt to collect, a bid bond that [it] determined BAE is obligated to pay under Korean law . . . ."). The dispute arises out of a Memorandum of Agreement between BAE and DAPA that "obligated BAE to use its best efforts to reach agreement with the [U.S. Government] to include certain contract terms and scope of work" in the contract between the U.S. Government and DAPA.  Defs.' Opp'n Pl.'s Mot. Summ. J. 12, ECF No. 75.  Though styled as a "Memorandum of Agreement," it is in substance a contractual undertaking that is indistinguishable from "best efforts" provisions that are common in private contracting as well as government contracting.  *See, e.g.*, *Mylan Pharm., Inc. v. Am. Cyanamid Co.*, Nos. 94-1402, 94-1472, 1995 WL 86437, at *1 (4th Cir. Mar. 3, 1995) (discussing a best efforts clause in a contract between a pharmaceutical company and a marketing firm); *Structural Grp., Inc. v. Fyfe Co., LLC*, No. CCB-14-78, 2016 WL 4537762, at *2 (D. Md. Aug. 30, 2016) (discussing a best efforts clause in a contract between a construction-products manufacturer and a distributor).  That the Memorandum of Agreement concerned efforts to upgrade South Korea's F-16 fleet does not alter the fundamentally commercial nature of the contract.  *See Weltover*, 504 U.S. at 514.

But South Korea disputes the commercial nature of its dealings with BAE by arguing that the Memorandum of Agreement merely relates to but does not itself amount to commercial activity.  Defs.' Supp. Br. 9–10.  This argument refers to a distinction drawn in *Nelson*, which held that "based upon" means "something more than a mere connection with, or relation to, commercial activity."  507 U.S. at 358 (quoting 28 U.S.C. § 1605(a)(2)).  In that case, Nelson, an engineer formerly employed at a state-owned Saudi hospital sought tort damages for his unlawful detention and torture at the hands of the Saudi Government, which Nelson alleged occurred in retaliation for his efforts to alert superiors to safety hazards at the facility.  *Id.* at

351–52.  The Court held Saudi Arabia immune from suit because illegal imprisonment and torture "boils down to abuse of the power of [Saudi Arabia's] police," actions that "however monstrous . . . have long been understood . . . as peculiarly sovereign in nature." *Id.* at 361.  That the illegal imprisonment and torture arose out of Nelson's employment at the Saudi hospital could not render the state actions commercial in character because Nelson's employment was "not the basis for" his suit.  *Id.* 358; *see also In re Tamimi*, 176 F.3d at 280 (holding that the FSIA barred a woman from bringing a garnishment action against her ex-husband's employer, a Saudi-owned company, because the ex-husband's employment was not the basis of the parties' domestic relations dispute).  In this case, there is no similarly tenuous relationship between the conduct that is the basis of BAE's suit and commercial activity.  Entering into a contract that includes a best efforts clause and is a prelude to a military sales contract is itself commercial activity.  *See Mylan*, 1995 WL 86437, at *1; *Structural*, 2016 WL 4537762, at *2.

Finally, this commercial conduct occurred "in the United States," 28 U.S.C. § 1605(a)(2), because it entailed "substantial contact with the United States," *id.* § 1603(e).  The Memorandum of Agreement is a contract between BAE—an American company—and South Korea and requires BAE to make best efforts to secure agreed upon contractual terms from the U.S. Government and to pay South Korea money originating in the U.S. if it fails to do so.  All of the essential elements of the contractual performance promised in the Memorandum of Agreement were to occur in the United States.

South Korea's contractual dealings with BAE are not immune from suit under the FSIA.  Thus, this Court possesses personal and subject-matter jurisdiction.  *See Bradley*, *supra*, 240–41.

Act-of-State Doctrine

The act-of-state doctrine requires U.S. courts to refrain from exercising jurisdiction where "the relief sought or the defense interposed . . . require[s] a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory." *W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l*, 493 U.S. 400, 405 (1990).   The Supreme Court has applied the doctrine to bar review of tort claims predicated on an illegal detention and the legality of government seizures and expropriations of property.   *Id.* (citing *Underhill v. Hernandez*, 168 U.S. 250, 254 (1867); *Oetjen v. Cent. Leather Co.*, 246 U.S. 397, 304 (1918); *Ricaud v. Am. Metal Co.*, 246 U.S. 304, 310 (1918); *Banco Nacionale de Cuba v. Sabbatino*, 376 U.S. 398, 439 (1964)).   The Fourth Circuit has applied the doctrine to bar review of a foreign deportation.   *LaRoque v. Commonwealth of Australia*, No. 87-6066, 1987 WL 38392, at *1 (4th Cir. 1987) (per curiam).   Detention, deportation, and property seizure and expropriation are all concrete actions that a state performs through its instrumentalities.

By contrast, BAE does not ask the Court to invalidate any official act performed by South Korea.   The record before me is devoid of any evidence that South Korea has seized or expropriated any of BAE's property located in South Korea, and BAE has identified no governmental act in South Korea that it seeks to invalidate.   In this suit, BAE seeks a declaration that its Letter of Guarantee is "null and void" as a matter of contract-law principals; that the Letters of Guarantee and Memorandum of Agreement are unenforceable because they "circumvent the dispute resolution procedure for Foreign Military Sales"; and that BAE met its obligations under the Letter of Guarantee.   Second Am. Compl. ¶¶ 68–96.   Resolving the dispute only requires the Court to interpret the contractual transactions between BAE and South Korea and to evaluate the enforceability of the contract provisions in light of the FMS program's

requirements and structure.  Should the Court rule in BAE's favor, it would express no opinion on any action taken by South Korea or its instrumentalities.  Accordingly, the "factual predicate for the application of the act of state doctrine does not exist." *W.S. Kirkpatrick*, 493 U.S. at 405.

South Korea attempts to refashion BAE's claim to create a better fit with the act-of-state doctrine by arguing that ruling in BAE's favor would require "the Court to declare invalid and unenforceable [South Korea's] sovereign decisions to confiscate the bid bond that Korean law required BAE to post and pursue recovery of the bond through litigation in the Korean courts." Defs.' Supp. Br. 17–18.  Though South Korea has issued a notice of confiscation, it has not in fact seized any BAE property.  *See* Second Am. Compl. ¶ 55.  Nor does BAE challenge the validity of any South Korean law or request that the preliminary injunction be made permanent. *See id.* 23–24.  South Korea's attempt to convert a contract-interpretation case into expropriation case is unavailing.

## Conclusion

This dispute arises out of BAE's attempts to perform on a contract that required it to render its best efforts to secure South Korea's desired terms in a military sales contract between the U.S. Government and South Korea.  Best efforts clauses are not unique to government contracting—indeed they are frequently utilized in private contracting as well.  The FSIA does not shield foreign governments from commercial contract claims such as those in this case.  The act-of-state doctrine is also inapplicable because this is purely a contract interpretation case and does not call upon the court to render judgment on any official act performed by South Korea. The Court has jurisdiction over this matter and is not barred from exercising it.  South Korea's Motion for Summary Judgment is denied, and I will address BAE's Motion for Summary Judgment in a separate Memorandum Opinion and Order.

**<u>ORDER</u>**

Accordingly, it is, this <u>24</u><sup>th</sup> day of <u>October</u>, <u>2016</u> hereby ORDERED that

Defendants' Opposition to Plaintiff's Motion for a Preliminary Injunction, ECF No. 80,

which I construe as a Motion for Summary Judgment, IS DENIED.


_____/S/_____

Paul W. Grimm
United States District Judge

jlb